IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| RODOLFO ARANDA, | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | NO.  3:12-CV-00385-ATB |
| | § | **(by consent)** |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION,[1] | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision.  Plaintiff appeals

from the decision of the Commissioner of the Social Security Administration ("Commissioner")

denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

Jurisdiction is predicated upon 42 U.S.C. § 405(g).   Both parties have consented to trial on the

merits before a United States Magistrate Judge.  The case was accordingly transferred to this Court

for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court

Rules of the Western District of Texas.   For the reasons set forth below, the Court AFFIRMS the

Commissioner's decision.

## I.  PROCEDURAL HISTORY

Plaintiff Rodolfo Aranda filed his DIB application on May 8, 2009.  (R. 88).  His application

was initially denied on June 18, 2009, and denied again upon reconsideration on July 13, 2009. (R.

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and the last sentence of 42 U.S.C. § 405(g), she is substituted as the Defendant herein.

36, 42).   A hearing was then requested by Plaintiff and was subsequently held on May 9, 2011, in

El Paso, Texas, before Administrative Law Judge ( "ALJ") John R. Morris.  (R. 20, 54).

On May 24, 2011, the ALJ issued a decision finding that Plaintiff was not disabled. (R. 8-15).
The ALJ found that Plaintiff had the following severe impairments: Grade I degenerative
anterolisthesis of C5-C6, cervicalgia, and degenerative joint disease of the left knee. (R. 10).  The
ALJ determined that Plaintiff had the residual functional capacity to perform the full range of
medium work as defined in 20 CFR 404.1567(c) and retained the ability to perform his past relevant
work as a truck driver. (R. 11, 14-15).  Plaintiff's request for review was denied by the Appeals
Council on July 27, 2012, which made the ALJ's decision the final administrative decision.  (R. 1-3).

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).  On
September 26, 2012, Plaintiff submitted his motion to proceed *in forma pauperis*. (Doc. 1).  His
motion was granted on October 2, 2012.  (Doc. 4).  On October 3, 2012, Plaintiff filed his
Complaint.  (Doc. 5).  The Commissioner answered on December 4, 2012. (Doc. 13).  On January
7, 2013, Plaintiff filed his brief in support of his claim and the Commissioner filed her reply brief
on February 11, 2013. (Doc. 19, 23).  This case was transferred to this Court on January 23, 2013.
(Doc. 20).

## II.  FACTUAL BACKGROUND

Plaintiff, who was born on February 9, 1955, was fifty-six years old at the time of the ALJ's
decision.  (R. 23, 88).  He finished high school and completed two years of college.  (R. 22, 23).
During the fifteen years immediately preceding his disability application, Plaintiff worked as a heavy
equipment operator and as a long haul truck driver.  (R. 23, 117, 140).  Although Plaintiff testified

that he stopped working in 2008, Plaintiff also reported working from 2010 to 2011 as a truck driver for Ameritrans in El Paso, Texas. (R. 23, 180).

Plaintiff testified that he has problems with his knee and that he needs to use a cane for walking.  (R. 24).  Plaintiff also stated that he has a herniated disc and problems in his cervical vertebra and lower back.  (R. 25).  Plaintiff estimated that he can only walk a quarter of a block to a block before he needs a break, and he can stand for no more than ten minutes. (R. 25, 129). Because of the problems with his foot and legs, Plaintiff testified that he does not have much power in his legs and experiences numbness and tingling.  (R. 25-26).  Plaintiff testified that he has problems with his arms due to arthritis and claims that he has poor vision, headaches, and depression.  (R. 26).  Plaintiff further testified that due to the medications that he takes, he has stomach ulcers.  (R. 25).

## III.  ISSUES

Plaintiff presents the following issues for review:

1.  Whether the ALJ's residual functional capacity determination is supported by substantial evidence.  (Doc. 19:2-5).

2.  Whether the ALJ erred in failing to consider Plaintiff's obesity when determining Plaintiff's residual functional capacity.  (Doc. 19:5-8).

## IV.  DISCUSSION

### A.    Standard of Review

This Court's review of the Commissioner's decision to deny benefits is limited to two inquires: (1) whether the decision is supported by substantial evidence, and (2) whether the

Commissioner used the proper legal standards to evaluate the evidence. *Myers v. Apfel,* 238 F.3d 617, 619 (5th Cir. 2001), citing *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied,* 514 U.S. 1120 (1995); 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401 (1971). A finding of "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Johnson v. Bowen,* 864 F.2d 340, 343–344 (5th Cir. 1988) (per curiam) (citing *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983)).

The determination of whether there is substantial evidence to support the fact findings of the Commissioner does not involve reweighing the evidence, or trying the issues de novo. *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000); *Haywood v. Sullivan,* 888 F.2d 1463, 1466 (5th Cir. 1989). The court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance. *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993) (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir.1990)).

The court's role is to "scrutinize the record in its entirety to determine whether substantial evidence supports" the Commissioner's findings. *Randall v. Sullivan,* 956 F.2d 105, 109 (5th Cir. 1992) (citing *Ransom v. Heckler,* 715 F.2d 989, 992 (5th Cir. 1983) (per curiam)). "The role of the courts in this quintessentially administrative process is extremely narrow" and "the Commissioner's decision is granted great deference." *Lewis v. Weinberger,* 515 F.2d 584, 586 (5th Cir. 1975); *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995). If the Commissioner applied the proper

4

principles of law and his findings are supported by substantial evidence, they are conclusive and must be affirmed. *Spellman v. Shalala,* 1 F.3d at 360.  Conversely, if the Commissioner's findings are not supported by substantial evidence, or the Commissioner incorrectly applied the law, the reviewing court may, *inter alia,* reverse the Commissioner's decision and remand the case for further proceedings.  *Murkeldove v. Astrue,* 635 F.3d 784, 792 (5th Cir. 2011).

## B.    Evaluation Process

"Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Sinayi v. Astrue*, No. 3:11-CV-2770-D, 2012 WL 3234414, at *2 (N.D. Tex. Aug. 9, 2012) (quoting 42 U.S.C. § 423(d)(1)(A)).  In determining disability, the ALJ makes his findings according to a sequential five-step evaluation.  20 C.F.R. § 404.1520.  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis. *Greenspan v. Shalala*, 38 F.3d at 236.

In the first step, the ALJ determines whether the claimant is currently engaged in substantial gainful activity.   20 C.F.R. § 404.1520(a)(4)(i).   "Substantial gainful activity" means the performance of work activity involving significant physical or mental abilities for pay or profit." *Newton*, 209 F.3d at 452-53 (citing 20 C.F.R. § 404.1572(a)-(b)).  An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of his medical condition or his age, education, and work experience.  20 C.F.R. § 404.1520(b).

The ALJ then determines under the second step whether the claimant has a medically determinable physical or mental impairment that is severe or a combination of impairments that is

5

severe.  20 C.F.R. § 404.1520(a)(4)(ii); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

"[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101.  Any application of this standard will be presumed incorrect unless "the correct standard is set forth by reference to this opinion (*Stone*) or another of the same effect, or by an express statement that the construction we give to [the regulation] is used." *Id.* at 1106.  An individual who does not have a "severe impairment" will not be found to be disabled.  20 C.F.R. § 404.1520(c).

Under the third step, an individual who has an impairment that meets or is medically equal to the criteria of a listed impairment in Appendix 1 of the regulations will be considered disabled without the consideration of vocational factors.  20 C.F.R. § 404.1520(d).  If the claimant does not qualify under the Listings, the evaluation proceeds forward.  20 C.F.R. § 404.1520(e).

Before commencing the fourth step, the ALJ assesses the claimant's residual functional capacity, which is the claimant's maximum work capability.  *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); 20 C.F.R. § 404.1520(e).  The ALJ then proceeds to step four and uses the claimant's residual functional capacity to determine whether the impairment prevents the claimant from performing his past relevant work.[2]  20 C.F.R. § 404.1520(f).  If an individual is capable of performing the work he has done in the past, a finding of "not disabled" will be made.  20 C.F.R. § 404.1520(f).

If an individual's impairment precludes him from performing his past relevant work, the fifth

---

[2] Past relevant work is work that was done by the claimant within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it.  20 C.F.R. § 416.960(b)(1).

and final step evaluates the claimant's ability to do other work given his residual capacities, his age, education, and work experience.  If an individual's impairment precludes him from performing any other type of work, he will be found to be disabled.  20 C.F.R. § 404.1520(g).

An individual applying for benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).  The claimant bears the burden of proof on the first four steps of the sequential analysis, and once met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989).  The Commissioner may meet this burden by the use of the opinion testimony of vocational experts or by the use of administrative guidelines provided in the form of regulations.  *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982).  The Commissioner must demonstrate that other work exists in significant numbers in the national economy that the claimant can do given the claimant's residual functional capacity, age, education, and work experience.  *Id.* at 1153.  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work.  *Anderson v. Sullivan*, 887 F.2d at 632.

## C.    The ALJ's Decision

The ALJ issued a decision on May 24, 2011.  (R.15).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 18, 2008, the alleged onset date.  (R. 10).  At step two, the ALJ determined that Plaintiff had the following severe impairments: Grade I degenerative anterolisthesis of C5-C6, cervicalgia, and degenerative joint disease of the left knee. (R. 10).

7

Under step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 12).

Next, the ALJ determined that Plaintiff has the residual functional capacity to perform the full range of medium work defined in 20 C.F.R. § 404.1567(c). (R. 11). Based on the residual functional capacity findings, the ALJ concluded at step four that Plaintiff could perform his past relevant work as a truck driver. (R. 14-15). Accordingly, the ALJ ruled that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 15).

## V.  ANALYSIS

### A.  The ALJ's Finding that the Plaintiff Was Not Disabled Is Supported By Substantial Evidence.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to take into account all of Plaintiff's limitations. (Doc.19:3). According to Plaintiff, the ALJ's findings are inconsistent with the evidence from the medical records. In particular, Plaintiff claims that his ability to sit and stand is more limited than what the ALJ determined. (Doc. 19:3). Plaintiff states that his knee swells when he walks, and that he cannot sit or stand for long periods of time and constantly has to change positions. (Doc. 19:3). Moreover, Plaintiff states that he has severe pain in his arm, back, waist, and legs. (Doc. 19:4).

The relevant question before the Court is whether the ALJ's decision is supported by substantial evidence, not whether the record contains evidence to support more severe limitations. *See Navarro v. Colvin*, No. A-12-CV-040-LY-AWA, 2013 WL 1704795, at *3 (W.D. Tex. Apr. 19, 2013) (citing *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997)). The determination of whether there is substantial evidence to support the fact findings of the Commissioner does not involve

8

reweighing the evidence, or trying the issues *de novo*. *Newton,* 209 F.3d at 452. Conflicts in the evidence are for the Commissioner and not for this Court to resolve. *Spellman*, 1 F.3d at 360.

In support of his claim that the ALJ's decision is not supported by substantial evidence, the Plaintiff cites to a number of medical examinations. Plaintiff, however, is guilty of cherry-picking the evidence and fails to mention that at those same visits, most of those same doctors recorded evidence contrary to his position. For example, Plaintiff cites to Dr. Augustine O. Eleje's examination on June 3, 2009, which revealed Plaintiff had tenderness to his left knee. (R. 183). However, during that examination, Dr. Eleje also observed that Plaintiff had a normal gait and station and that Plaintiff had normal arm swing, normal heel-toe, and tandem walking. (R. 182). Dr. Eleje reported Plaintiff was ambulatory without assistance and that his intrinsic hand strength rated 5/5. (R. 182). The report also indicates Plaintiff's left knee x-ray showed no acute bone abnormalities, no significant osteoarthritis, and a possible joint effusion. (R. 183). Although Dr. Eleje diagnosed Plaintiff with left knee degenerative joint disease, "Cervical IVD w/o myelopathy," and cervicalgia (neck pain), Dr. Eleje found that Plaintiff's alleged pain did not correspond to any findings from his examination. (R. 182-183). Based on these observations, Dr. Eleje concluded that Plaintiff "has no limitations with sitting, standing, moving about, handling objects, lifting, carrying, hearing, speaking." (R. 183).

Plaintiff also draws attention to an x-ray of Plaintiff's cervical spine on June 3, 2009, which showed he had Grade I degenerative anterolisthesis of C5-C6 with loss of disc heights, small osteophyte, and mild uncovertebral degenerative change. (R. 186). But at an examination on June 4, 2009, Plaintiff did not report any leg or joint pain to Efrain Azcarate, D.O., at Centro San Vicente. During that examination, Dr. Azcarate observed that Plaintiff's systems were normal and specifically found that Plaintiff's neck was normal with no decrease in suppleness, that his musculoskeletal

system was normal, and that his neurological system was normal with no demonstrated dysfunction. (R. 195).

In addition, Plaintiff states that Dr. Jimmy Breazeale completed a physical residual functional capacity assessment on June 16, 2009, in which he determined Plaintiff was able to perform only a limited range of light work.  (Doc. 19:4).  A review of that report, however, shows that Dr. Brezeale believed Plaintiff can lift and carry twenty pounds occasionally and lift or carry ten pounds frequently; can stand or walk about six hours in an eight hour workday; can sit for a total of about six hours in an eight hour workday; and can push and pull without limitations. (R. 208).  Plaintiff further fails to mention that Dr. Breazeale's opinion was based on a review of the record before him and not a direct examination.  (R. 207-214).

Finally, Plaintiff points to an examination performed on August 24, 2009, by Dr. Charmaine A. Martin.  Dr. Martin assessed Plaintiff with a costochondral lesion in the left medial femoral condyle and an abnormal gait and extremities.  (R. 216).  Plaintiff, however, omits that that same month, on August 10, 2009, Dr. Mary Spalding and Dr. Fernando Aviles examined Plaintiff and observed that Plaintiff possessed a normal gait and normal extremities. (R. 218).  Although Plaintiff was assessed with a left meniscal tear, Dr. Spalding and Dr. Aviles found that his herniated cervical disc was stable, and prescribed Naproxen (Aleve).  (R. 219).   An MRI ordered on August 13, 2009, and read by Dr. Hugo Isuani revealed no MCL tear "with very minimal irregularity of the chondral surface medial femoral condyle."  (R. 220).

On October 8, 2009, Plaintiff, complaining of pain in the left medial and posterior knee, began a series of physical therapy exercises.  (R. 258).  By December 17, 2009, following fifteen visits, Plaintiff reported feeling better as a result of the therapy and described his pain as a 2 on a

scale of 10.  (R  233). Although continued therapy was recommended for pain in the hamstring

tendon, Plaintiff did not return to physical therapy and was discharged on March 16, 2010. (R. 235-

236).

  The mere existence of pain is not an automatic ground for obtaining disability benefits.

*Cook*, *v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985).  The proper standard for evaluating pain is

codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423.  The statute

provides that allegations of pain  must be corroborated by objective medical evidence showing the

existence of a physical or mental impairment which could reasonably be expected to cause pain.

*Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir.  2001) (per curiam).  Plaintiff states that he is

only required to show that there is objective medical evidence of an underlying impairment which

could reasonably be expected to produce the pain or support the symptoms alleged, and he does not

have to produce objective evidence of the pain itself or its severity.  (Doc. 19:5) (citing 42 U.S.C.

§ 423(d)(5)(A)).  However,

> 42 U.S.C. § 423(d)(5)(A)[] merely states that a claimant's testimony as to pain or other
> symptoms cannot be conclusive evidence of disability and that objective medical
> evidence must be offered and considered when determining whether a claimant is
> disabled.  It does *not* establish that the production of objective medical evidence
> resolves the question of whether a particular impairment is disabling.

*Navarro*, 2013 WL 1704795 at *4. (internal citation omitted).  The ALJ must still consider the

entirety of the record when making his determination, and decide what weight to accord the various

medical reports.  *Johnson v. Bowen*, 864 F.2d at 347.  This Court in turn must determine whether

the ALJ's determination is supported by substantial evidence.  *Myers v. Apfel,* 238 F.3d at 619.

  The ALJ never denied that Plaintiff suffered certain types of limitations in accordance with

available medical records.  However, the ALJ determined that Plaintiff's limitations were not as

limiting as the Plaintiff alleged.  For example, the ALJ stated that he considered Plaintiff's failure to follow through with his physical therapy when considering the full extent of Plaintiff's limitations. (R. 14). Subjective evidence of pain will not take precedence over conflicting medical evidence. *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).

Moreover, despite his claims of limitations, Plaintiff acknowledged that he worked as a truck driver for Ameritrans in El Paso, Texas, in 2010 and 2011, which occurred after November 18th, 2008, the alleged disability onset.  (R. 180).  This fact indicates that Plaintiff had the ability to perform the job of a truck driver after the alleged disability. Additionally, as the ALJ pointed out, Plaintiff's income record shows that he received unemployment benefits in the 1st, 2nd, and 4th quarters of 2009.  (R. 13-14) (referencing R. 106, 107).  In order to receive unemployment benefits, an individual must certify that he is "ready, willing and able to work."  (R. 13).  Therefore, by receiving those benefits, Plaintiff, in fact, acknowledged that he had the ability to work after the disability onset date.

Based on these inconsistencies in Plaintiff's testimony and the record, the ALJ determined that Plaintiff's subjective complaints were not credible,   which is "precisely the kind[] of determination[] that the ALJ is best positioned to make" as the ALJ "enjoys the benefit of perceiving first-hand the claimant at the hearing."  *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).  After examining the record and the ALJ's opinion, the Court finds substantial evidence supports the ALJ's residual functional capacity finding with respect to this claim.

**B.    The ALJ Properly Considered Plaintiff's Obesity Claim.**

Plaintiff states that the ALJ failed to consider his obesity.  (Doc. 19:5).  Plaintiff reasons that any individual with a body max index ("BMI") equal to the Plaintiff's has a high risk of

developing obesity related impairments.[3]   Therefore, Plaintiff argues, the ALJ's omission of it constitutes a ground for reversal.

The burden of establishing disability within the meaning of the Social Security Act lies upon the claimant; there is no burden on the Commissioner to prove the absence of a claimant's alleged impairments. *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).   In the first four steps of the five-step review, the claimant has the initial burden of proving that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 147 (1987).   A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1985).   The existence of disability must be demonstrated by medically acceptable clinical and laboratory diagnostic findings. 42 U.S.C. § 423(d)(3), (d)(5); *Cook*, 750 F.2d at 393; *Randall v. Astrue*, 570 F.3d 651, 658 (5th Cir. 2009).

Plaintiff argues that the ALJ failed to consider Plaintiff's obesity in his decision.   The evidence indicates that Plaintiff is five feet and eight inches tall and weighed 210 pounds or more at the time of the ALJ's determination. (Doc. 19: 5).   As a result, Plaintiff estimates that he had a BMI of 31.9, putting him at a high risk for developing obesity-related impairments.  (Doc. 19:5).

According to Social Security Regulations, "[o]besity is a complex, chronic disease characterized by excessive accumulation of body fat."  Social Security Ruling (SSR) 02-1P, 2002 WL 34686281 at *2 (2002). The National Institutes of Health established guidelines for physicians

---

[3] "BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m2). For adults, both men and women, the Clinical Guidelines describe a BMI of 25–29.9 as 'overweight' and a BMI of 30.0 or above as 'obesity.'"  Social Security Ruling 02–1P

to diagnose obesity. *Id.*  Generally, if a person has a BMI of 30.0 or above, they are obese.  *Id.*

However, simply having a BMI over 30 does not always equate to obesity.

> [A]lthough there is often a significant correlation between BMI and excess body fat, this is not always the case. The Clinical Guidelines also provide for considering whether an individual of a given height and weight has excess body fat when determining whether he or she has obesity. Thus, it is possible for someone whose BMI is below 30 to have obesity if too large a percentage of the weight is from fat. Likewise, someone with a BMI above 30 may not have obesity if a large percentage of the weight is from muscle.  However, in most cases, the BMI will show whether the individual has obesity. It also will usually be evident from the information in the case record whether the individual should not be found to have obesity, despite a BMI of 30.0 or above.

2002 WL 34686281, at *2 (2002).  Accordingly, obesity is not simply a BMI number, but is instead

usually accompanied by a diagnosis from a physician.

Plaintiff's treatment notes and medical diagnoses are silent regarding his alleged obesity, and

he made no mention of it during the ALJ hearing.  The issue was only first raised when Plaintiff

sought review of the ALJ's decision. (Doc 19:5-7).  Further, Defendant correctly points out that none

of Plaintiff's physicians diagnosed Plaintiff as obese.  (Doc 23:11). Pursuant to SSR 02-1P,

> When the evidence in a case does not include a diagnosis of obesity, but does include clinical notes or other medical records showing consistently high body weight or BMI, we may ask a medical source to clarify whether the individual has obesity. However, in most such cases we will use our judgment to establish the presence of obesity based on the medical findings and other evidence in the case record, even if a treating or examining source has not indicated a diagnosis of obesity. Generally, we will not purchase a consultative examination just to establish the diagnosis of obesity.

2002 WL 34686281, at *3.

Although Plaintiff's alleged obesity was not specifically addressed by the ALJ, there is no

evidence in the record that Plaintiff's alleged obesity limits his ability to function in any meaningful

way. *See Hobbs v. Astrue*, 627 F.Supp.2d 719, 726–27 (W.D.La. 2009) (finding that while the ALJ

14

should have recognized plaintiff was obese based on his height and weight, "[he] did, in effect, consider the impact of [the plaintiff's] obesity on her ability to work when he considered the impact of the physical symptoms caused or aggravated by her obesity.").  As already discussed, Dr. Eleje observed that Plaintiff had a normal gait and station during a June 3, 2009, examination.  (R. 182). Dr. Eleje concluded that Plaintiff "has no limitations with sitting, standing, moving about[.]  (R. 183).  The following day, Plaintiff was examined by Dr. Azcarate and his physical examination, including musculoskeletal tests, were normal.  (R. 203-204).  Dr. Mary Spalding and Dr. Fernando Aviles examined Plaintiff and observed that Plaintiff possessed a normal gait and normal extremities during an August 10, 2009, examination.  (R. 218).   None of the doctors who examined Plaintiff recorded concerns that Plaintiff's weight either exacerbated or caused any of his symptoms or limitations.

SSR 02–1P requires an ALJ to consider the effects of obesity when assessing RFC, including the fact that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately."  SSR 02–1P, 2002 WL 34686281, at *1.  An ALJ may "not make assumptions about the severity or functional effects of obesity combined with other impairments," but instead must "evaluate each case based on the information in the case record." *Id.* at *6.  The evidence in the record here fails to support, and Plaintiff has failed to demonstrate, how the combined effect of obesity with other impairments is disabling.

Because the ALJ's RFC assessment contemplated all the evidence regarding Plaintiff's health, and that evidence necessarily reflected the impact of his weight, the ALJ did not commit legal error notwithstanding his failure to explicitly discuss Plaintiff's obesity.

## VI.  CONCLUSION

For the reasons set above, the Court concludes that the ALJ properly evaluated Plaintiff's allegation of disability.  The ALJ did not commit legal error and his decision that Plaintiff was not disabled is supported by substantial evidence.  Based on the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **AFFIRMED**.  A separate judgment in accordance with this Memorandum Opinion will issue this date.

**SIGNED** and **ENTERED** this 15th day of November, 2013.

_____
ANNE T. BERTON
UNITED STATES MAGISTRATE JUDGE